**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Dauntel Lamont EVANS, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 27, 2006.

Filed June 5, 2006.

---

5. Salting is performed by use of a one-ton dump truck equipped with an adjustable salt spreader. *See* N.T., 1/25/05, at 35.

William M. Shreve, Harrisburg, for appellant.

James P. Barker, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

BEFORE: DEL SOLE, P.J.E, STEVENS and ORIE MELVIN, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Dauntel Lamont Evans, appeals *nunc pro tunc* from the judgment of sentence entered February 23, 2004, pursuant to the order entered September 2, 2005 granting his petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546, and reinstating his right to file a direct appeal *nunc pro tunc*. On appeal, he challenges the sufficiency of the evidence as to indecent assault, and the sufficiency of the determination that he is a sexually violent predator pursuant to Megan's Law.[1] Additionally, he challenges the discretionary aspects and legality of his sentence. After review, we affirm.

¶ 2 The facts and procedural background of this matter were summarized by the trial court in its memorandum opinion as follows:

On January 29, 2003, eleven year old [B.H.] was on her way to the neighbors where her brother had been playing with one of his friends to tell him that it was time to go home when she encountered the appellant. The appellant, who happens to be the neighbor's boyfriend as well as a basketball coach to [B.H.'s] brother, called [B.H.] over and said that he had something to tell her that was to be kept between the two of them. The appellant asked [B.H.] if she liked him, to which [B.H.] responded that she liked him as a friend. The appellant continued to insist that [B.H.] liked him and then told her that there were some things that he would like to do to her but that he couldn't do because her mom was around and because she was just a little kid and it wouldn't look right. Then the appellant told [B.H.] that she was sexy and asked for a hug. When

[B.H.] gave the appellant a hug he told her to look up and then grabbed her placing one arm behind her back and one arm around her neck while he kissed her and stuck his tongue in her mouth. [B.H.] pulled away from the appellant, went into the neighbor's house to get her brother and then returned home. As soon as [B.H.] got home she told her mother that she needed to talk to her and then she began to cry as she told her mother what had happened.

Following a jury trial on September 12, 2003, appellant was convicted of [indecent assault, corruption of minors, and unlawful contact/communication with a minor.[2]]. [The trial court] ordered an assessment by the Pennsylvania State Sexual Offenders Assessment Board (SOAB) to render an opinion as to whether the appellant should be classified as a sexually violent predator. On February 23, 2004, a hearing was held and [the trial] court heard testimony from the Commonwealth's witness, Nancy Einsel as well as the appellant. At the conclusion of the hearing, [the trial] court found appellant to be a sexually violent predator under Megan's Law[,] and imposed an aggregate term of incarceration of not less than ninety (90) months nor more than one hundred and eighty (180) months at a state correctional facility. In addition, appellant was ordered to pay the costs of prosecution plus fines.

Trial Court Opinion, 7/26/04, at 1–2 (citations to the record and footnote omitted).

¶ 3 On March 25, 2004, Appellant filed a direct appeal from his judgment of sentence. However, due to the untimely filing of his notice of appeal, this Court quashed

---

1. 42 Pa.C.S.A. §§ 9791–9799.

2. 18 Pa.C.S.A. §§ 3126(a)(7), 6301(a), and 6318(a)(1), respectively.

Appellant's appeal on November 23, 2004. *Commonwealth v. Evans*, No. 486 MDA 2004 (Per Curiam Order). Appellant did not file a petition for allowance of appeal with our Supreme Court. On June 21, 2005, Appellant filed a *pro se* PCRA petition alleging ineffectiveness of counsel in failing to perfect his appeal in a timely manner. Present counsel was subsequently appointed to represent Appellant, and an amended PCRA petition was filed seeking reinstatement of Appellant's direct appeal rights due to the ineffectiveness of trial counsel. The Commonwealth failed to file a response to Appellant's amended PCRA petition. On September 2, 2005, the PCRA entered an order granting Appellant reinstatement of his direct appeal rights *nunc pro tunc*. This timely appeal followed.

¶ 4 Appellant presents the following questions for our review:

I. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO CONVICT APPELLANT OF THE CRIME OF INDECENT ASSAULT[?]

II. WHETHER THE SENTENCE IMPOSED UPON APPELLANT WAS UNREASONABLE AND EXCESSIVE GIVEN APPELLANT'S CIRCUMSTANCES[?]

III. WHETHER THE COMMONWEALTH FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE DEFENDANT IS A SEXUALLY VIOLENT PREDATOR[?]

IV. WHETHER THE CRIMINAL OFFENSE OF UNLAWFUL CONTACT/COMMUNICATION WITH A MINOR SHOULD MERGE WITH THE CRIMINAL OFFENSE OF INDECENT ASSAULT AND/OR CORRUPTION OF MINORS FOR THE PURPOSE OF SENTENCING[?]

Appellant's brief, at 6.[3]

¶ 5 Appellant first challenges the sufficiency of the evidence to support his conviction for indecent assault. "Our well-settled standard of review when evaluating a challenge to the sufficiency of the evidence mandates that we assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner." *Commonwealth v. Salamone*, 897 A.2d 1209 (Pa.Super.2006) (citation omitted). We must determine whether there is sufficient evidence to enable the fact finder to have found every element of the crime beyond a reasonable doubt. *Commonwealth v. Clark*, 895 A.2d 633 (Pa.Super.2006) (citation omitted).

In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and

---

**3.** The trial court directed Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b), and he complied by raising these same issues. Appellant has also appended a copy of this statement in his brief as required by Pa.R.A.P. 2111(d).

the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Id.*

¶ 6 The statute under which Appellant was convicted provides in relevant part that,

A person who has indecent contact with the complainant or causes the complainant to have indecent contact with the person is guilty of indecent assault if:

\* \* \* \* \* \*

the complainant is less than 13 years of age[.]

18 Pa.C.S.A. § 3126(a)(7). Furthermore, indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S.A. § 3101.

¶ 7 Appellant submits that "a kiss on the mouth is not the type of conduct the statute was intended to prevent." Appellant's brief, at 13. He argues that "there was no touching of an intimate part of the victim's person for the purpose of arousing or gratifying sexual desire." *Id.* at 15. We disagree. Quite to the contrary, the act of wrapping one's arms around another person and inserting one's tongue into another's mouth clearly involves the touching of an intimate part of that person. We agree with the Commonwealth that such an act does not occur outside of the context of a sexual or intimate situation. Moreover, the fact-finder was free to infer that his comments, that the victim was sexy and he would like to do some things to her, further revealed that his intimate touching of the victim was done for the purpose of arousing or gratifying his sexual desire. Based on our consideration of the record utilizing our established standard of review, we conclude the evidence is

sufficient to support Appellant's conviction under 18 Pa.C.S.A. § 3126(a)(7).

¶ 8 Appellant's next issue challenges the discretionary aspects of his sentencing. He submits that his sentence is unreasonable in that the sentence at count three is outside the guideline's range and, further, that the trial court failed to consider Appellant's expression of remorse.

¶ 9 Sentencing is a matter vested within the discretion of the court and will not be disturbed absent an abuse of that discretion. *Commonwealth v. Miller,* 835 A.2d 377, 380 (Pa.Super.2003). Before this Court may review the merits of a challenge to the discretionary aspects of a sentence, we must engage in a four-pronged analysis. In *Commonwealth v. Hyland,* 875 A.2d 1175, 1183 (Pa.Super.2005), this Court stated:

Challenges to the discretionary aspects of sentencing do not entitle an appellant to appellate review as of right. *Commonwealth v. Sierra,* 752 A.2d 910, 912 (Pa.Super.2000). Prior to reaching the merits of a discretionary sentencing issue:

[W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa. R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Hyland,* 875 A.2d at 1183 (quoting *Commonwealth v. Martin,* 416 Pa.Super. 507, 611 A.2d 731, 735 (1992)). "Objections to the discretionary aspects of a sentence are

generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing." *Id.* (citations omitted).

¶ 10 Applying the four-factor test to the present matter, we find that Appellant satisfies the first prong, as he was permitted to file his appeal *nunc pro tunc.* Appellant fails to satisfy the second prong, however, as his prior counsel failed to raise these claims at the sentencing hearing or file a post-sentence motion. Accordingly, we find these claims are waived. *Commonwealth v. Reeves,* 778 A.2d 691, 692 (Pa.Super.2001); *Commonwealth v. Parker,* 847 A.2d 745 (Pa.Super.2004).

¶ 11 Appellant next contends that the Commonwealth failed to prove by clear and convincing evidence that he is a sexually violent predator (SVP).

A challenge to the sufficiency of the evidence is a question of law subject to plenary review. We must determine whether the evidence admitted at [the SVP hearing] and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the [statute]. A reviewing court may not weigh the evidence or substitute its judgment for that of the trial court.

At a hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator. In reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to establish each element required by the statute.

*Commonwealth v. Snyder,* 870 A.2d 336, 346 (Pa.Super.2005) (internal quotations

and citations omitted; bracketed information added). "The clear and convincing standard requires evidence that is 'so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue.'" *Commonwealth v. Maldonado,* 576 Pa. 101, 109, 838 A.2d 710, 715 (2003) (citation omitted).

¶ 12 A sexually violent predator is defined as "a person who has been convicted of a sexually violent offense as set forth in § 9795.1 and who is determined to be a sexually violent predator under § 9795.4 due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9792. Predatory behavior is defined by statute as "[a]n act directed ... at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." 42 Pa.C.S.A. § 9792. To determine whether Appellant's behavior is predatory, the factors listed in § 9795.4 should be considered.

¶ 13 The factors listed are:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

42 Pa.C.S.A. § 9795.4.

¶ 14 There is no question that Appellant has been convicted of a sexually violent offense, thereby satisfying part one of the definition. Appellant contests the trial court's determination that the Commonwealth satisfied part two of the definition. Specifically, he asserts that factors (1)(i), (ii), and (vi) are not present in this case, and, therefore, the evidence was insufficient to sustain the SVP designation. We disagree.

¶ 15 The trial court summarized the evidence offered at the SVP hearing as follows:

At the hearing, Ms. Einsel[, a member of the SOAB,] testified that the appellant met the criteria set forth in the statute for sexually violent predator status. In coming to this conclusion, Ms. Einsel reviewed the appellant's background, state correctional institute reports, past psychological reports, parole board record, police records and past court transcripts. Ms. Einsel discovered that the appellant had an extensive arrest and incarceration record starting at the age of 15, including several assaults, robberies, and rape charges. Ms. Einsel concluded that the appellant had narcissistic traits as well as a disregard of rights and very little empathy for his victims. Further, Ms. Einsel based her opinion on the fact that the appellant had engaged in predatory behavior. The appellant sought a relationship with [B.H] solely for the purpose of victimization. The appellant lured [B.H.] with the intent of being sexual with her and when [B.H.] told the appellant that she wanted to leave he told her that if there was anything she needed in the future he would get it for her and stated that there was more he would like to do to her, indicating that he was trying to lure her into future behavior with him. Also relevant was the fact that [B.H.] was only 11 years old and vulnerable to the appellant's advances. In the past the appellant had demonstrated his disinterest in treatment, and although it was not intended for sexual treatment, his non-compliance is still relevant. The appellant has a history of substance abuse and a lack of stability in his personal life as well as his employment and education history. Ms. Einsel also considered the appellant's behavioral characteristics noting his propensity for chronic lying, conning, manipulative behavior, and poor behavioral controls.

Trial Court Opinion, 7/26/04, at 7–8.

¶ 16 Based upon our review, it is clear that the testimony of Ms. Einsel establishes part two of the statutory definition. Specifically, after reviewing Appellant's background and a multitude of records, Ms. Einsel "reached the conclusion that [Appellant] met the criteria set forth in the Diagnostic and Statistical Manual, Fourth Edition, Test Revision for personality disorder NOS [Not Otherwise Specified]."

N.T. SVP Hearing and Sentencing, 2/23/04, at 8–9. Additionally, Ms. Einsel recounted the statutory criteria relating to predatory behavior that she considered and concluded that Appellant demonstrated predatory behavior. She stated the basis of this opinion as follows:

> [Appellant] knew the victim through attending her brother's basketball games.... During the basketball games she would sit beside him or near him. [Appellant] discerned that she liked him.
>
> She was waiting for her brother ... when he approached her and called her over. He ... indicated initially to engage her in conversation that he knew she liked him and asked her if she liked him. When she said yes, she did, he indicated that it might be more than [as] a friend. She denied that. He coerced her into getting closer to him by asking for a hug and when she did that, he sexually kissed her, told her that he thought she was sexy. He indicated he would like to do more with her but there are other people around her that precluded him from doing so.
>
> All of that behavior is very predatory and with the intent of being sexual with the victim, luring her, trying to convince her. When she wanted to leave, he told her that in the future if there is anything that she wanted, he would get it for her. Indicating that he was trying to lure her into future behavior with him.

*Id.* at 11–12.

¶ 17 Appellant did not offer any expert testimony to rebut the Commonwealth's witness. Instead, he testified that "[t]his whole affair ... never happened" and maintained that he "never had contact with the [victim] outside of the presence of her mother." *Id.* at 33. *Id.* Appellant further disputed the accuracy of certain facts from his past that Ms. Einsel relied upon in reaching her conclusions. *Id.* at 33–36. Applying our standard of review, we find that the record reveals that the Commonwealth has presented clear and convincing evidence sufficient to establish each element required by the statute.

¶ 18 Finally, Appellant challenges whether his conviction of indecent assault and unlawful contact with a minor should have merged for sentencing purposes. He claims merger was proper here because indecent assault and unlawful contact with a minor share the same elements and that one act serves as the basis for both convictions. "The issue of whether a sentence is illegal is a question of law; therefore, our task is to determine whether the trial court erred as a matter of law and, in doing so, our scope of review is plenary." *Commonwealth v. Williams,* 871 A.2d 254, 262 (Pa.Super.2005).

¶ 19 The doctrine of merger is a rule of statutory construction designed to determine whether the legislature intended for the punishment of one offense to encompass that for another offense arising from the same criminal act or transaction. *Commonwealth v. Kitchen,* 814 A.2d 209, 215 (Pa.Super.2002), *affirmed* 576 Pa. 229, 839 A.2d 184 (2003). In order for two convictions to merge, the crimes must be greater-and lesser-included offenses and the crimes must be based on the same facts. *Commonwealth v. Murray,* 836 A.2d 956, 962 (Pa.Super.2003)(citing *Commonwealth v. Gatling,* 570 Pa. 34, 807 A.2d 890 (2002)) (plurality). "Our Supreme Court has held that 'the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses.'" *Commonwealth v. Thomas,* 879 A.2d 246, 263 (Pa.Super.2005) (citing *Commonwealth v. Anderson,* 538 Pa. 574, 579, 650 A.2d 20, 22 (1994)). "If two crimes each require proof

of at least one element that the other does not, then the crimes are not greater and lesser included offenses, and therefore the sentences do not merge." *Id.* (citing *Anderson* at 581–582, 650 A.2d at 23–24).

¶ 20 The crime of unlawful contact with a minor is defined, in relevant part, as follows:

(a) **Offense defined.**—A person commits an offense if he is intentionally in contact with a minor for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

(1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S.A. § 6318(a)(1). Furthermore, a minor is "[a]n individual under 18 years of age," and "Contacts" is defined as follows:

Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S.A. § 6318(c).

¶ 21 In the present case, the elements of this crime consist of intentionally, either directly or indirectly, contacting or communicating with a minor for the purpose of engaging in an indecent assault. The elements of indecent assault require a touching of the sexual or other intimate parts of a person under the age of 13 for the purpose of arousing or gratifying sexual desire, in either person. Here, the contact, proscribed by § 6318, took place when Appellant called the minor victim over to his car, asked her if she liked him, told her that there were things that he wanted to do to her, asked for a hug, and told her to look up at him. This contact was clearly initiated for the purpose of effectuating the subsequent indecent assault, which consisted of inserting his tongue into the 11–year–old victim's mouth. While both crimes were carried out contemporaneously, such a circumstance does not require merger for sentencing purposes. Appellant's argument is premised upon the mistaken belief that the indecent assault must be carried out in order for the actor to have committed the unlawful contact offense. To the contrary, once the Appellant intentionally contacts or communicates with the minor for the purpose of engaging in the prohibited activity the crime of unlawful contact with a minor has been completed. The actual physical touching of an intimate part of the victim's body, with the requisite purpose of arousing or gratifying sexual desire, is not an element of the crime contemplated in § 6318. In other words, the actor need not be successful in completing the purpose of his or her contact or communication with the minor. Moreover, the contact/communication contemplated in § 6318 need not be made in person and can be accomplished through an agent or agency. Clearly, such is not the case with an indecent assault. Since each offense requires proof of an element that the other does not, the offenses do not merge.

¶ 22 Judgment of sentence affirmed.